**In the Matter of the BELFORT COR-
PORATION, Bankrupt.**

No. 9968.

United States District Court
D. Maryland, Bankruptcy Division.

Dec. 15, 1955.

Rome & Rome and Jesse Slingluff, Jr., Baltimore, Md., for trustee.

Rome & Rome and I. William Schimmel, Baltimore, Md., for petitioning creditors.

Bernard H. Herzfeld, Baltimore, Md., for bankrupt.

THOMSEN, Chief Judge.

This case is before me for allowance of commissions and fees, since the referee, for a sufficient reason, considers himself disqualified.

The Belfort Corporation was adjudicated bankrupt on August 6, 1947. Its principal assets were (a) two parcels of real estate in West Virginia, one improved by three factory buildings, and the other by an inn, subject to mortgages and other liens, (b) some tangible personal property located in leased premises in Baltimore, and (c) numerous claims against railroads and others.

Hyman P. Tatelbaum was appointed receiver. He did not conduct the business of the bankrupt, and he did not render any services with respect to the real estate in West Virginia, which was leased to a tenant who paid his rent directly to the mortgagee pursuant to an arrangement made before bankruptcy. The receiver did collect a number of accounts and rendered services with respect to the personal property generally.

Francis A. Michel was appointed trustee. He sold the real estate and liquidated the remaining assets. The three factory buildings, including equipment, were sold free of liens for $122,500, subject to adjustments. The trustee accepted a first mortgage deed of trust for $91,250 as part of the purchase price. After $9,708.31 had been paid on account of this mortgage, leaving a balance of $81,541.69, it went into default. The mortgage was foreclosed and the property was resold for $80,000.

The only question raised with respect to the trustee's compensation is whether he is entitled to commissions on the full amount of both the sale and the resale of the three factory buildings. It is too clear for argument that he is not so entitled. Section 48, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 76, sub. c, provides:

"c. Trustees. The compensation of trustees for their services, payable after they are rendered, shall be a fee of $5 for each estate, * * * and such further sum as the court may allow, as follows:

"(1) Normal Administration. When the trustee does not conduct the business of the bankrupt, such sum as the court may allow, but in no event to exceed 6 per centum on the first $500 or less, 4 per centum on moneys in excess of $500 and not more than $1,500, 2 per centum on moneys in excess of $1,500, and not more than $10,000, and 1 per centum on moneys in excess of $10,000, upon all moneys disbursed or turned over by them to any persons, including lienholders: * * *."

The $81,541.69 unpaid balance on the purchase money mortgage was not

collected by the trustee, and did not constitute "moneys disbursed or turned over by (him) to any persons". The trustee did, however, work faithfully and long, and should receive the maximum compensation which may be awarded him under the statutory provisions quoted above.

The principal question with respect to the receiver's compensation is whether the proceeds of sale of the West Virginia real estate and certain rentals therefrom, collected and disbursed by the trustee, may be included in the amount upon which the maximum compensation which may be allowed the receiver is calculated. Section 48, sub. a(2) of the Act, 11 U.S.C.A. § 76, sub. a(2), provides:

"a. Receivers. The compensation of receivers appointed under this Act, for their services payable after they are rendered, shall be as follows: * * *

"(2) With Full Powers. Receivers appointed pursuant to clause (3) of section 2 of this Act who serve otherwise than as mere custodians shall receive compensation by way of commissions upon the moneys disbursed or turned over to any persons, including lienholders, by them and also upon the moneys turned over by them or afterward realized by the trustees from property turned over in kind by them to the trustees, such amount as the court may allow, but in no event to exceed 6 per centum on the first $500 or less, 4 per centum on all in excess of $500 but not more than $1,500, 2 per centum on all above $1,500 and not more than $10,000, and 1 per centum on all above $10,000."

There is little authority which throws any light on the meaning of the words "property turned over in kind by them to the trustees". In re Lowell Textile Co., D.C.Mass.1923, 288 F. 989, considered the question whether the receivers were entitled to commissions on the proceeds of sale of certain mortgaged property, sold by the trustee. The court said:

"The last question is whether the receivers are entitled to include the entire sum in computing their commission. The receivers did not take possession of the mortgaged property nor sell it. No part of it or the proceeds of it ever came into their possession or was turned over by them. They are not entitled to include it." 288 F. at page 990.

In Hammer v. Tuffy, 2 Cir., 1944, 145 F.2d 447, one of the questions was whether certain claims collected by the trustee should be considered in fixing the compensation of the receiver. Chief Judge Learned Hand, speaking for the court, said:

"On the merits we are also not in agreement; but here the division is different. Judge Swan and I think that the order should be affirmed, on the grounds taken below. The question this time depends upon the meaning of § 48, sub. a(2), of the Bankruptcy Act of the words: 'moneys * * * realized by the trustees from property turned over in kind by them' (receivers) 'to the trustees.' The question is whether the claims of the bankrupt against the two decedents' estates, were 'property turned over in kind' by Tuffy, as receiver, to Tuffy, as trustee. If they were 'turned over' at all, they were indeed turned over 'in kind'; but we think that they were not 'turned over.' All that happened was that Tuffy was appointed trustee. We think that the clause refers to such property as at least permits of physical transfer: e. g. chattels, or notes, bonds, warehouse receipts or the like, which are regarded for many purposes as incorporating the choses in action or the chattels of which they are the evidence. We do not believe that a receiver, who has no control over such causes of action as are here in question, can be said to turn them over to the trustee who is substitut-

ed in his place. Judge Clark, however, thinks it difficult thus to differentiate between various forms of property, and on the whole undesirable since the statute merely states the maximum allowable compensation and this interpretation will restrict judicial discretion; he concurs in the denial of compensation here in the absence of proof of any 'services' as to this property." 145 F.2d at page 451.

■■■ It is not necessary to decide in this case either (1) whether the receiver did "turn over" the West Virginia real estate to the trustee or (2) whether the proceeds of sale of real estate by a trustee may ever be considered "moneys * * * afterward realized by the trustees from property turned over in kind" by the receiver to the trustee. The receiver in the case at bar rendered no services in connection with the real estate in West Virginia, and for that reason, if for no other, should not receive any commissions based on the proceeds of its sale or the rentals received therefrom. He is entitled to commissions at the rate set out in sec. 48, sub. a(2) on the $5,749.85 disbursed or turned over by him, and on any moneys realized by the trustee from property turned over in kind by the receiver to the trustee.

■■■ Neither the receiver nor the trustee is entitled to commissions on the rentals paid directly by the tenant of the West Virginia property to the mortgagee before the property was sold.

■■■ Counsel for petitioning creditors and counsel for the bankrupt did more work than usual, and should be allowed $300 each. Counsel for the receiver prepared several petitions, but only two of them dealt with matters of any importance, and the legal services shown by their petition are not worth more than $250. West Virginia counsel for the trustee, Layne H. Ford, is entitled to the $500 claimed.

Rome and Rome and Jesse Slingluff, Jr., ask $30,000 as attorneys for the trustee. It was stated at the hearing that Mr. Slingluff had been employed for a particular service only, and that his interest in the fee would be $1,000. Messrs. H. Paul Rome and Morton E. Rome rendered valuable and able services over a period of years. All but about $10,000 of the money received by the trustee came from the sale of the West Virginia properties, and interest, rentals, etc. connected therewith. The situation at first looked so hopeless that the then referee was unwilling to permit the expenditure of funds of the estate for a trip to West Virginia to try to salvage something above the mortgage. H. Paul Rome assumed the expenses of his first trip himself, and through skillful handling of the matter realized a total of about $170,000 from the West Virginia property, which netted about $60,000 for the general estate, after payment of liens and expenses, which were heavy, but would have been heavier if Mr. Rome had not sold the smaller property and resold the larger property without any real estate broker's commissions being charged to the estate. Counsel for the trustee also succeeded in reducing lien claims by over $71,000, preferred claims by over $2,200 and claims of general creditors by over $12,000. Unfortunately they kept no record of the time spent on the case over the years, but it was shown that one or the other of them spent about thirty-five or forty days out of town on the case.

The amount in the hands of the trustee before commissions and fees is $71,200.32. Wage claims total $478.05; tax claims $16,187.88; and unsecured claims $77,567.13.

■■■ It is generally recognized that the elements to be considered in fixing fees in bankruptcy are: "the time spent, the intricacy of the problems involved, the size of the estate, the opposition met, and the results achieved, all subject to the economical spirit of the Bankruptcy Act". Collier on Bankruptcy, 14th Ed., sec. 62.12. That spirit must be respected, but should not be stressed to the extent of driving the abler members of

the bar out of the field, where their services may often be of great value to general creditors, as in this case. I conclude that the allowance to counsel for the trustee should be $23,000.

The referee is instructed to prepare an account giving effect to these rulings.