384 F.2d 776
 In the Matter of the WOODMAR REALTY COMPANY, a Corporation, Debtor.
CITY OF HAMMOND, INDIANA, a Municipal Corporation, and
Woodmar Realty Company,a Corporation, Debtor, Appellants,
v.
Walter A. McLEAN, Trustee et al., Appellees.
 Nos. 15694, 15695.
 United States Court of Appeals Seventh Circuit.
 June 22, 1967, Certiorari Denied Jan. 15, 1968, See 88 S.Ct.
779.
 
 Cordell C. Pinkerton, G. Edward McHie, Owen W. Crumpacker, Hammond, Ind., Milton K. Joseph, Chicago, Ill., for appellants.
 Herschel B. Davis, Gary, Ind., for appellees.
 Before KNOCH, CASTLE and KILEY, Circuit Judges.
 KILEY, Circuit Judge.
 
 
 1
 These consolidated appeals by Woodmar Realty Company, No. 15694, and the City of Hammond, Indiana, No. 15695, challenge the district court's judgment overruling their objections to the Trustee's Supplemental Final Report and to the fee and expense allowances for the Trustee and his attorney in the Woodmar bankruptcy proceeding. We affirm.[1]
 
 WOODMAR
 
 2
 Woodmar contends that the Trustee's motion for summary judgment resulting in the orders entered July 24, October 10 and December 31, 1963, and May 15, 1964, allowing claims against the bankrupt estate was unauthorized under Fed.R.Civ.P. 56 and the precedents and should have been stricken.
 
 
 3
 Since we wish to aid in the termination of this long pending proceeding, we are not disposed to treat this contention as waived by Woodmar's failure to appeal from these final orders.[2]
 
 
 4
 The parties agreed in 1957 that a typical lien claim, No. 441, and Woodmar's objections be tried as a 'test case' to establish the law for determination of the 313 claims pending. The case was tried, with the Trustee excluded from participation, and in July 1961, the district court entered judgment overruling as meritless Woodmar's objections and allowing the claim. Subsequently Woodmar appealed, and this court affirmed on August 20, 1962. In re Woodmar Realty Co., 307 F.2d 591 (7th Cir. 1962).
 
 
 5
 On November 29, 1962, the district court ordered Woodmar to file statements to disclose wherein the dicision on claim 441 was not, as stated in the Trustee's motion, controlling as to all lien claims. The statement was filed by Woodmar with respect to 132 of the more than 300 claims. The court reviewed the statement in exhaustive opinions, and found that the dicision on claim 441 was determinative of all the claims. Thereafter it entered the several orders allowing the claims.
 
 
 6
 We think that it would be unconscionable at this late stage of the proceedings to set aside the district court's orders, upon the ground that the Trustee's motion was unauthorized-- a ground that could and should have been, but was not, presented here for dicision in timely appeals.
 
 
 7
 Even if literally the Trustee falls outside Rule 56,[3] which we do not decide,[4] we hold that in view of the long history of this litigation, the stipulated test case for all claims and the failure of Woodmar to respond to the court's order to present facts requiring hearing, a proper administration of justice requires that the judgment before us be affirmed. We think the judgment appealed from is right and we are not disposed to say under the particular facts here that it must fall because the Trustee was permitted at an earlier stage to make a motion for summary judgment.
 
 
 8
 We do not view the Trustee on this record as having taken a position inimical to the bankrupt estate or violative of his trust. We think his obligation was to do what he did, under the circumstance, i.e., seek in summary fashion to terminate the proceeding in a just and prudent way with the court's approval. Cf. In re Woodmar Realty Co., 294 F.2d 785, 793 (7th Cir. 1961), cert. denied, 369 U.S. 803, 82 S.Ct. 643, 7 L.Ed.2d 550 (1962). We presume that a bankrupt, in whose shoes the Trustee stands, In re Woodmar,294 F.2d at 793, would under all the circumstances here deem it his obligation to see that lien creditors with valid claims lawfully received as soon as practicable what was due them from assets fairly available.
 
 
 9
 We consider to be wholly meritless Woodmar's argument that the district court's order of November 29, 1962, requiring filing of statements by Woodmar as to the Trustee's motion for summary judgment, was an abuse of discretion under Fed.R.Civ.P. 16. In view of the previous trial testing claim 441, we think the order was clearly justified under Rule 16 in the circumstances of this case.[5]
 
 
 10
 We turn now to the judgment before us entered by the district court on February 10, 1966, pursuant to a hearing upon the Trustee's Supplemental Final Report and petitions for fees by the Trustee and his attorney. The judgment 'denied' objections of Woodmar and the City of Hammond (holder of claims Nos. 261, 507, 450 and 235), to the Report and petitions, and so far as pertinent on this appeal, ordered payment of all claims with limitations as to some; allowed the Trustee fees of $5,205.75 and expenses of $729.96; allowed Trustee's attorney fees of $120,000 and expenses and reimbursals of $3,300.96; and approved the Supplemental Final Report.
 
 
 11
 We think the law settled in the trial of claim 441 answers Woodmar's argument that the first two appeals to this court[6] precluded the district court from ordering payment of the claims without giving Woodmar the opportunity to be heard as an adversary. Woodmar, after that trial, had no 'right' to contest each claim it objected to, unless it produced facts or issues not then known or presented or decided in that trial. And the district court decided in final unappealed orders on the basis of the claim 441 decision that no new facts or issues were presented in opposition to Trustee's motion for allowance of the claims. The failure of Woodmar to respond sufficiently to the court's November 29, 1962, order by raising genuine material issues of fact precludes it from now claiming violation of due process rights in denial of a hearing on each claim objected to.
 
 
 12
 No question can now be raised by Woodmar with respect to the validity of the qualified payments ordered in the judgment to '32 lien claims involving dead persons,' etc. These claims were allowed by the district court under the Trustee's motion for summary judgment. Woodmar did not appeal from the order of allowance. There was no need to require proof again of those claims. Similarly, there was no reason to retry the 102 claims which Woodmar had compromised in 1957 and 1958. The compromises were set aside by the district court on April 28, 1964, upon petitions of certain lien creditors seeking relief from the compromises. The court then ordered allowance of the claims in the amounts found due by the Trustee. This court dismissed Woodmar's appeal from an order denying a motion to strike those claims on the ground that the order was non-appealable. 307 F.2d 595 (7th Cir. 1962).
 
 
 13
 Finally, Woodmar challenges the fees and expense allowances as an abuse of discretion. It contends no evidence was received or permitted at the hearing, that the district court's opinion underlying the allowances was based on bias and prejudice against Woodmar and its counsel, that the court did not find any benefit to the estate from the services rendered, and that the allowances violated federal standards. There is no merit in any of these contentions.
 
 
 14
 For more than twelve years' service (or 1,530 1/2 hours) in this proceeding, the court allowed the Trustee the fee of $5,207.75, the maximum permitted under 11 U.S.C. 76(a) and the predecessor of 11 U.S.C. 76(c)(1) (1964).[7] Averaged out, the allowance is about $3.50 per hour for work done and to be done in winding up the estate. We find no basis for Woodmar's claim of bias and prejudice.
 
 
 15
 There was no need for taking evidence at the hearing. Woodmar filed eleven pages of objections to the Trustee's report. The court found that except for three paragraphs the objections 'are almost an exact copy' of parts of objections made to the Trustee's Report in April, 1958, and subsequently decided against Woodmar, and that these three paragraphs ignored the decision in 1958 upon test claim 441 which effectually overruled the objections in the paragraphs. We find meritless the contention that the Trustee's services did not benefit the estate. The record and district court's opinion fully refute the contention.
 
 
 16
 The court found that the allowance of $120,000 to the Trustee's attorney 'constitutes reasonable compensation for work done and to be done' in winding up the estate. Woodmar offers no persuasive reason why Trustee's counsel, who has served since early 1953 and spent a total of 567 1/2 days (or 1605 3/4 hours) involving much litigation in the district court, this court and the Supreme Court, should not have received the allowance the court granted. We see no reason for disagreement with the findings of the court and we find no abuse of discretion in the allowances made to the Trustee and his attorney.
 
 CITY OF HAMMOND
 
 17
 What we have said in discussing the contentions of Woodmar settles the contention of Hammond, owner of three claims allowed in the amount of $5,968.28, that the Trustee was obliged to object to all of the lien claims. The test case of claim 441 in 1958 and the 1963 summary judgment proceedings rejected the same contentions that Hammond now advances that the liens upon which the claims are based had lapsed under Indiana law and that certain 'bar dates' set in the original Chapter X proceedings in 1941 barred approximately 90 of the claims allowed. These contentions have no merit. In re Woodmar Realty Co., 307 F.2d 591, 592, 594 (7th Cir. 1962).
 
 
 18
 Hammond Complains that no specific findings of fact underlying lien allowances were made under Rule 52(a). Specific findings were unnecessary, since the orders pursuant to the motion for summary judgment allowing the claims found that no genuine material issues of fact were presented. A R Inc. v. Electro-Voice, Inc., 311 F.2d 508, 513 (7th Cir. 1962). We see no reason to consider the challenge now made as to inclusion of 'illegal interest' in allocations to claimant. The time for this challenge was upon the allowance of orders in the summary judgment proceedings. All other Hammond contentions, such as those with respect to the Luscher and 'dead' and 'non-existent' lien claimants, the effect of state foreclosure decrees on the liens and the 'misappropriation' of trust assets are no longer viable.
 
 
 19
 We have in resolving Woodmar's contentions with respect to the fee and expense allowances of the Trustee and his attorney answered all arguments against the allowances presented by Hammond.
 
 
 20
 The Supplemental Final Report recommended: payment of 272 lien claims set forth on Exhibit A to the final report, claims in which the bonds and coupons were filed with the claim; the payment 'only upon presentation of the bonds and coupons' of 43 lien claims set forth on Exhibit B to the final report, claims filed by 'alleged' owners who had not filed bonds or coupons; and the allocation of $43,677.97 to unpaid lien indebtedness of the estate for which no claims had been filed, shown on Exhibit C.
 
 
 21
 The district court judgment ordered 'payment * * * now' on claims listed in Exhibits A and B, subject to proper deductions for administrative expenses, upon presentation of bonds or coupons or 'other satisfactory proof of ownership.' The Trustee was ordered to pay the amounts allocated to claims listed in B into the clerk's office for disposition in accordance with section 66 of the Bankruptcy Act, 11 U.S.C. 106 (1964), and 28 U.S.C. 2041-42 (1964), and these amounts are to remain there until ownership is established in the manner provided. Payment 'now' was ordered on claims listed on Exhibit C with the same provision on respect to payment to and disposition by the clerk as given for those on Exhibit B.
 
 
 22
 We are not persuaded by Hammond that the order with respect to Exhibit C claimants is in error because section 66 of the Act does not apply since it presupposes claims that are provable and not 'unproved liens.' Hammond offers no legal or equitable alternative to the statutory scheme applied by the court.
 
 
 23
 The Trustee's motion to dismiss Woodmar's appeal, taken with the case, is denied. The judgment is affirmed.
 
 
 
 [1]
 A motion was made in this court to dismiss Woodmar's appeal for lack of standing because (a) in 1964 this court decided it had lost its previous standing, In re Woodmar Realty Co., 306 F.2d 479 (7th Cir. 1962), cert. denied, Woodmar Realty Co. v. McLean, 380 U.S. 952, 85 S.Ct. 1084, 13 L.Ed.2d 969 (1965), and (b) Woodmar's 1965 purchase of three claims without court approval did not give it standing but rather gave it a claim against itself or extinguished the claim. We prefer not to dismiss the appeal because there is language in the opinion in the above case which may have misled the bankrupt into the anomalous position of asserting standing because of claims bought with money borrowed from one of its directors. Id. at 480
 
 
 [2]
 This bankruptcy proceeding is twenty-six years old. It commenced as a Chapter X reorganization proceeding in 1941 and became by order a straight bankruptcy proceeding in 1953. Since 1953 there has been a more or less continuous course of litigation, including eight appeals from the judgments of four district court judges, Judges Slick (now deceased), Swygert (now Circuit Judge), Parkinson (later Circuit Judge and now deceased), and Tehan
 In a final district court order of February 24, 1960, Woodmar's previously acquired authority to settle claims against the estate was revoked. On October 10, 1963, the district court decided Woodmar no longer had standing as a party 'in these proceedings.' No appeal was taken by Woodmar. On September 23, 1964, this court dismissed by order an appeal by Woodmar and held that 'appellant is no longer a party in interest and lacks standing to appeal.' In re Woodmar Realty Co., No. 14756, 7th Cir. April 28, 1964. This dismissal presumably motivated purchase of the claims by Woodmar in 1965 so as to regain standing to object to the Trustee's petition for approval of the Supplemental Final Report. For purposes of this opinion, we assume but do not decide that Woodmar has standing.
 
 
 [3]
 Rule 56. Summary Judgment
 (a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof.
 (b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.
 
 
 [4]
 But see In re Yellow Transit Freight Lines, Inc., 207 F.2d 602, 604 (7th Cir. 1953); Beall v. Pinckney, 132 F.2d 924 (5th Cir. 1943)
 
 
 [5]
 Rule 16. Pre-Trial Procedure; Formulating Issues
 In any action, the court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider
 (1) The simplification of the issues;
 (6) Such other matters as may aid in the disposition of the action.
 
 
 [6]
 In re Woodmar Realty Co., 241 F.2d 768, 64 A.L.R.2d 883 (7th Cir. 1957), and 284 F.2d 815 (7th Cir. 1960)
 
 
 [7]
 The services commenced before 1956