In the Matter of **MIDWEST ENGINEERING AND EQUIPMENT CO., a Corporation, Bankrupt.**

Theodore D. KAHN, Trustee,

v.

MIDWEST ENGINEERING AND EQUIPMENT CO., Bankrupt.

No. 18449.

United States Court of Appeals, Seventh Circuit.

March 25, 1971.

---

Theodore D. Kahn, Max Chill, Chicago, Ill., for Trustee; Charles B. Bernstein, Chicago, Ill., of counsel.

Before MAJOR, Senior Circuit Judge, and KERNER and PELL, Circuit Judges.

MAJOR, Senior Circuit Judge.

In this bankruptcy matter, Theodore D. Kahn was elected trustee by the creditors and, by order of the referee, was authorized to represent himself as trustee in a legal capacity. The referee recommended an allowance to Kahn as trustee in the amount of $350.00, and $5,-500.00 for legal services. Upon review, the district court disapproved the recommended allowance for legal services and reduced the same to $2,700.00. A motion for reconsideration was filed by the trustee, which the court denied. From this order of denial Kahn appeals.

The referee found that the fee which he recommended was reasonable, and the question here is whether the district court was justified in rejecting such recommendation. What constitutes reasonable fees in a bankruptcy proceeding often presents a perplexing problem, and we are not aided in the instant matter by any brief in opposition to that filed on behalf of Kahn. The issue must be determined from the record, and in particular from the report filed by the trustee with the referee, the latter's findings of fact upon which his recommendations were based, and the memorandum opinion filed by the district court which states the reasons for rejecting the recommendations of the referee.

The total assets of the estate amounted to $19,618.70, of which sum $19,000.-00 came into the estate as a result of a law suit filed by Kahn against the Devon Bank, based on defects in certain financing statements filed with the Secretary of State, alleged preferences and late filing of financing statements. Kahn as trustee, as a basis for his authority to render legal services, among other things stated, " * * * that the benefit that would be derived for this Estate could be somewhere between $25,000.00 and $50,000.00 which is all a contingency depending on the outcome of the litigation that would be instituted by the Trustee; that there are no monies in this Estate and no property to the knowledge of your Trustee that could be liquidated at the present to defray the payment of any of these expenses."

On April 19, 1968, the referee entered an order authorizing Kahn to act in a legal capacity, which in part provided:

"(d) to file such suits in such courts as may be necessary to recover preferential payments or pledges made by the Bankrupt to creditors of the Bankrupt as defined in the Bankruptcy Act as amended,

"(e) to recover any and all assets of the Bankrupt pledged pursuant to agreement to secure indebtedness of the Bankrupt which pledge agreements may be void and of no effect because of failure to record financing statements in accordance with the Commercial Code of the State of Illinois and to file suits in such Courts as may be necessary to recover such assets.

"compensation to be paid for such legal services performed herein as shall hereinafter be determined by order of this Court."

The trustee filed his final report and account on September 19, 1969, in which he detailed the preparation and filing of a suit in the district court against the Devon Bank. A settlement just prior to trial was made in the sum of $19,000.00. The report shows that a total of all monies collected amounted to $19,618.70, and disbursements were $394.30, leaving a balance on hand of $19,224.40. Trustee's fees of $557.37, based on collections, and attorney's fees of $6,000.00, were requested. Attached to the petition was a time schedule of services rendered, which listed 47 different dates covering a period of some 17 months and showing a total time of 122 hours.

The referee set forth in a memorandum decision the reasons for his recommended allowance, in part as follows:

"It appears clear from a review of the file that the Trustee acted both as Trustee and attorney for this estate and that the $19,000 recovered came as a result of filing the law suit against Devon Bank in which novel legal questions were presented for the first time in this jurisdiction in connection with an interpretation of Section 60 of the Bankruptcy Act, Preferred Creditors; financing statements with incorrect addresses filed after the time provided by statute and given to secure antecedent debts, all of which were questions for decision by the Court.

"Since the principal officers of the bank [bankrupt] were personally liable on the obligation of the bankrupt, many interrogatories and hearings on depositions were necessary prior to trial.

"Hearings before the Court were necessary before a settlement was proposed and accepted by the parties and approved by the Court.

"The fees for work done depended upon recovery and if there had been no recovery there would have been no assets to pay for the time involved.

Under such circumstances the fees requested and allowances made herein are reasonable." [1]

It is a well recognized principle that the findings of a referee, particularly as to the matter of fee allowances, are entitled to and should be accorded great weight by the court on review. Reference to a few of the cases will suffice. In In re Valentine, D.C., 139 F. Supp. 576, 577, the court stated:

"The referee's discretion and judgment, if free from error of law and sufficiently supported by evidence, is entitled to great weight, even though he was not in office when the services were rendered. Collier on Bankruptcy, 14th ed., sec. 62.12, pages 1481–1483. In re American Range & Foundry Co., D.C.Minn., 41 F.2d 845, 847, 7 Am.Bankr.Rep., N.S., 170, the judge said: ' * * * it is not the business of this court to retry this question or to substitute its judgment for that of the referee, where there is nothing to show that he did not fairly pass on the question in view of the evidence before him, or that there is any mistake of law. * * * The business of fixing attorneys' fees in bankruptcy matters is one peculiarly for the referee.' "

Among the numerous other cases to the same effect see In re Paramount Merrick, Inc., 2 Cir., 252 F.2d 482, 485; Miller v. Robinson, 9 Cir., 378 F.2d 2, 3, and In re Dole Co., D.C., 244 F.Supp. 751, 754.

The fee of $5,500.00 found by the referee to be reasonable was at the rate of about $45.00 per hour for the number of hours claimed by Kahn. The allowance was about 30% of the $19,000.00 recovered for the estate, and the reduced fee of $2,700.00 allowed by the court was only about 14% of the recovery.

A number of cases are called to our attention for the purpose of showing by comparison that the fee fixed in the

---

1. The referee reduced the trustee's fees claimed in the amount of $557.37, to $350.00, and attorney's fees claimed in the amount of $6,000.00, to $5,500.00.

instant matter by the referee was reasonable. They are of little help because each depends upon its own factual situation. Such cases do reveal that the determination of a reasonable fee is often a perplexing problem and that it is dependent to a considerable extent upon the opinion of the one who makes the determination. For instance, in In re Belfort Corp., D.C., 136 F.Supp. 1, the referee was disqualified and the fees were fixed by the court. Counsel for the trustee recovered $60,000 for the estate and was allowed a fee of $23,000.00, or about 38%. In Hammer v. Tuffy, 2 Cir., 145 F.2d 447, the referee allowed the attorney a fee of $6,750.00 for services rendered in collecting about $18,-000.00, or about 38%. In In re Woodmar Realty Co., 7 Cir., 384 F.2d 776, this court upheld an allowance of $75.00 per hour to the trustee's attorney, and in Miller v. Robinson, 378 F.2d 2, the court upheld the referee's allowance on the same basis.

Referring to the referee's report, the district court stated:

"The apparent justification for what is at best an extremely generous allowance to the attorney for the trustee is that fees for work done depended upon recovery in the plenary action and that without the recovery there would have been no assets to pay for the time involved. In other words the theory is akin to that of a contingent fee. This Court does not believe that this consideration justifies an allowance far in excess of what would otherwise be reasonable compensation for the same services."

We disagree with this reasoning insofar as it forms a basis for the court's action in rejecting the fee finding of the referee. Of course, the fee determined by the referee must be reasonable, but in making such determination we think it proper to take into consideration, as the referee did, the contingency nature of the legal services performed.

In In re Barceloux, 9 Cir., 74 F.2d 288, 289, 293, the court stated:

"The attorneys for the trustee petitioned for the reasonable value of services rendered. In such a case the fees allowed, to be reasonable, must take into consideration that the attorneys rendered services, compensation for which was inherently contingent, for, unless a recovery were had, there would be no funds in the estate from which remuneration could be made for the effort put forth."

In In re Dole Co., D.C., 244 F.Supp. 751, 757, the court stated:

"The purpose of the courts in awarding a premium to the productive attorney for the trustee in a 'no asset' straight bankruptcy case is to *encourage* the bar to undertake such cases; that is, the premium is an 'incentive to attorneys to put forth their best efforts in cases which appear unpromising.'"

See also In re Osofsky, D.C., 50 F.2d 925, 927.

In connection with its discussion of the contingent nature of the legal services rendered by Kahn, the court stated, "The action filed by the trustee was not tried and the $19,000.00 was recovered through settlement of the case." This overlooks the fact that the case, which presented numerous difficult questions, was prepared for trial and that the settlement so far as we are aware might have been more beneficial to the estate than if he had gone to trial.

The court also mentions the fact that Kahn while rendering legal services was allowed $350.00 as trustee, and "there is no time schedule as to the services he performed in that capacity." We know of no requirement that such a time schedule be filed. The trustee's compensation is by statute based upon the value of the assets which come into his hands. See In re Belfort Corp., D.C., 136 F. Supp. 1, 2, and the statutory provision therein quoted. There is here nothing to show that the amount allowed the trustee was not fixed in accordance with the statute.

The court discusses what it refers to as statistical averages for all districts, including the Northern District of Illinois, purportedly for the purpose of demonstrating that the amount allowed for attorney fees exceeded such average. After doing so, the court recognized that such comparison formed no foundation for its opinion, citing and quoting from Jacobowitz v. Double Seven Corp., 9 Cir., 378 F.2d 405, 408.

Finally, the court apparently places considerable reliance upon its statement, "An examination of the time schedule for the attorney for the trustee discloses that much of his time was spent performing duties customarily performed by the trustee, including such items as a 'conference re lease deposit', 'receipt of letter from Alex Dolnick re rent security deposit' (1 hour), and preparing trustee's final report and account. Many other items include merely clerical or ministerial services such as serving notices and subpoenas, picking up exhibits, checking claims and filing report of claims, and answering correspondence."

All of the items mentioned show 10 or 12 hours spent out of a total of 122 hours claimed. It is not discernible how this court or the district court could, without proof, make a proper allocation between the trustee and the attorney of time spent by Kahn in each capacity. In fact, some of the items the court mentioned—such as preparing the trustee's final report, checking claims and filing report of claims—would appear to us to be for legal services. Even the time spent answering correspondence might be included in the same category, depending upon the subject matter.

Of course, we recognize that a person who acts in a dual capacity as trustee and attorney for the trustee is not entitled to overlapping compensation. However, all that is disclosed by the record in this respect is the sworn report of Kahn showing the time spent in the rendition of legal services for the estate and the referee's approval of the report.

Pertinent to the instant situation, this court in In the Matter of Hamilton Dis-

tributors, Inc., 7 Cir., 440 F.2d 1178, decided February 25, 1971, concluded:

"We are unable to determine reliably what services listed as legal were not. We are satisfied with the referee's Memorandum Decision statement that in making the allowances he considered the results achieved 'together with his knowledge' of the rendition of the legal services."

In Hammer v. Tuffy, 2 Cir., 145 F.2d 447, where it was claimed that the attorney had charged for more hours than were necessary, the court stated (page 451):

"We leave to the referee the determination of whether so much time was necessary; the record does not show that it was not."

It is our view and we so hold that the court erred in rejecting the finding of the referee that the sum of $5,500.00 allowed Kahn was a reasonable fee for legal services rendered. The order appealed from is, therefore, reversed and the cause remanded, with directions to proceed in accordance with this conclusion.