SAMUEL C. ENNIS & COMPANY, INC., et al., Plaintiffs-Appellants,

v.

WOODMAR REALTY COMPANY, an Indiana Corporation, and Owen W. Crumpacker, Defendants-Appellees.

No. 75–2104.

United States Court of Appeals, Seventh Circuit.

Argued April 29, 1976.

Decided Sept. 21, 1976.

As Corrected Sept. 24, 1976.

Edmond J. Leeney, Carl N. Carpenter, Hammond, Ind., Gilbert Gruenberg, Gary, Ind., William J. O'Connor, Charles Levin, Hammond, Ind., for plaintiffs-appellants.

Thomas T. Crumpacker, Aspen, Colo., Owen W. Crumpacker, Richard A. Miller, Hammond, Ind., for defendants-appellees.

Before FAIRCHILD, Chief Judge, and CUMMINGS and TONE, Circuit Judges.

TONE, Circuit Judge.

We must decide in this case whether, in light of 28 U.S.C. § 2283 and its relitigation exception, a federal court before which a bankruptcy proceeding was conducted may protect parties and attorneys in that proceeding and persons doing business with the trustee from relitigation in a state court of issues determined in that proceeding. The District Court answered in the negative because of the statute. We reverse.

The bankruptcy proceeding from which the case before us arises was commenced January 13, 1941, and terminated over 28 years later, on May 16, 1969. During the entire proceeding, which included eight appeals taken to this court,[1] the bankrupt, Woodmar Realty Company, an appellee

---

1. *In re Woodmar Realty Co.,* 241 F.2d 768 (7th Cir. 1957); *In re Woodmar Realty Co.,* 284 F.2d 815 (7th Cir. 1960); *In re Woodmar Realty Co.,* 294 F.2d 785 (7th Cir. 1961), *cert. denied,* 369 U.S. 803, 82 S.Ct. 643, 7 L.Ed.2d 550 (1962); *Woodmar Realty Co. v. McLean,* 306 F.2d 479 (7th Cir. 1962), *cert. denied,* 380 U.S. 952, 85 S.Ct. 1084, 13 L.Ed.2d 969 (1965); *In re Wood-* *mar Realty Co.,* 307 F.2d 591 (7th Cir. 1962); *In re Woodmar Realty Co.,* 307 F.2d 595 (7th Cir. 1962); *In re Woodmar Realty Co.,* No. 14756 (7th Cir. April 28, 1964) (unpublished order); *In re Woodmar Realty Co.,* 384 F.2d 776 (7th Cir.), *cert. denied,* 389 U.S. 1040, 88 S.Ct. 779, 19 L.Ed.2d 830 (1967).

here, was represented by Attorney Owen W. Crumpacker, the other appellee here. More than five years after the termination of the proceeding, Woodmar, represented by the same attorney, filed a damage suit in an Indiana state court charging the trustee in bankruptcy and various other participants in the bankruptcy proceeding with perpetrating a fraud on the bankruptcy court. The defendants in that action, after first moving to dismiss it, filed this federal action against appellees seeking to enjoin the state action. The District Court dismissed this action on the ground that 28 U.S.C. § 2283 forbids the relief sought.

Woodmar Realty was involved in the development and sale of real estate. When certain municipal bonds which had been used to finance improvements on its tracts were not paid, some of the bondholders, asserting special assessment liens against Woodmar land, filed a reorganization petition. A trustee and trustee's attorney were appointed and a bondholders' committee was formed. One member of the committee was appellant Floyd Murray, and its attorney was appellant Donald Gardner.

With court approval, the real estate was sold and the liens transferred to the proceeds. The sales were made through Samuel C. Ennis & Company, which, with Samuel C. Ennis, is among the appellants before us. Also an appellant is John Phrommer, who, together with Donald Gardner, purchased some of the parcels.

The original trustee and attorney were removed and their fee petitions denied because they were found to have an undisclosed conflict of interests. The District Court also found that certain sales of real estate by Ennis had not been made at arm's length, and that several fiduciaries had profited from speculation in the improvement bonds. The court concluded, however, that no prejudice had resulted to stockholders or creditors or the estate or its administration, and made no findings of fraud. No appeal was taken from this order, which was entered in 1952. See *In re Woodmar Realty Co.*, 294 F.2d 785, 790 & n. 2, 791–792 (7th Cir. 1961), *cert. denied*, 369 U.S. 803, 82 S.Ct. 643, 7 L.Ed.2d 550 (1962).

The case was then converted to a straight bankruptcy. Appellants Walter McLean and Herschel Davis were appointed as trustee and attorney for the trustee. Woodmar filed a petition to remove them, based on allegations that they were part of a conspiracy, with the original trustee and others, to procure the allowance of invalid bond claims. The District Court's denial of the petition was affirmed by this court in an opinion in which the charges against McLean and Davis were found to have been made in "gross bad faith." *In re Woodmar Realty Co., supra,* 294 F.2d at 789. The court remarked on "a vituperous tendency of counsel to read some heinous motive into the acts of anyone who dares to oppose him and of every judge who rules adversely to him" and a "pattern which the record reveals of charging both the dead and the living with fraud whenever an adverse ruling is contemplated or becomes a reality." *Id.* at 792. On reviewing the entire record of the proceedings, the court concluded:

> "We find a sordid picture of the repeated use of ill-founded charges of fraud as a trial tactic which is foreign to established concepts of honest and ethical advocacy. We want it clearly understood that repetition of that practice as disclosed by this record will not be tolerated in the future." *Id.* at 795.

Most of the bondholders' claims were eventually allowed and, as we have noted, the estate was finally closed in 1969.

In September 1974, Woodmar, still represented by the same attorney, filed in the Indiana state court the action appellants seek to enjoin. Damages in the amount of $2,500,000 were demanded. The complaint in that action names as defendants, in addition to those appellants already mentioned, appellants Edmond Leeney and Charles Levin, who, with appellant Floyd Murray, were the attorneys representing the bondholders in the bankruptcy proceeding. Woodmar alleges in the complaint that all the persons who are appellants here conspired to procure the payment of fraudulent

claims and misappropriate the assets of the estate.

All the same allegations of fraud were made many years earlier in the bankruptcy proceeding. This becomes apparent when the complaint filed in the Indiana state court is laid beside Woodmar's Amended Petition to Remove the Trustee and His Attorney filed January 13, 1959, which is set forth in the Appendix in Case No. 13215 in this court. Everything of substance in these allegations is discussed in the opinion in that case, *In re Woodmar Realty Co., supra,* 294 F.2d at 785. In the course of the bankruptcy proceeding all these allegations were ruled upon adversely to Woodmar. The only allegations of the Indiana complaint concerning occurrences after the decision in that case, apart from damage allegations, relate to the bankruptcy court's reinstatement and allowance of additional claims, allowance of fees, and directions for allocation and distribution of the assets of the estate. It is not alleged that these orders were procured by fraud or were otherwise improper. Even if these allegations are viewed as alleging further acts pursuant to the alleged conspiracy, they are defeated not only by the adjudication which we have already described but also by later decisions of this court affirming the allowance of the "test claim" and determining that the proceeds of the sale of estate assets were available to the bondholders, *In re Woodmar Realty Co.,* 307 F.2d 591 (7th Cir. 1962), and approving the trustee's final account, including trustees' and attorneys' fees, *In re Woodmar Realty Co.,* 384 F.2d 776 (7th Cir.), *cert. denied,* 389 U.S. 1040, 88 S.Ct. 779, 19 L.Ed.2d 830 (1967).

### 1.

■ Appellees argue that federal jurisdiction is lacking because plaintiffs and defendants are citizens of the same state. Jurisdiction exists, however, under the ancillary jurisdiction doctrine of *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). *Cf. Morrow v. District of Columbia,* 135 U.S.App.D.C. 160, 417 F.2d 728, 737–741 (1969). If Woodmar were suc-cessful in its state court action, the bankruptcy court's order of distribution would be nullified. It is true here, as it was in *Local Loan Co. v. Hunt,* that the federal court's jurisdiction is invoked by what is "in substance and effect a supplemental and ancillary bill in equity, in aid of and to effectuate the adjudication and order made by the same court." 292 U.S. at 239, 54 S.Ct. at 697. No independent basis for federal jurisdiction is necessary in such an action. As the Court said in *Local Loan,*

"That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled. [Citations omitted.] And this, irrespective of whether the court would have jurisdiction if the proceeding were an original one. The proceeding being ancillary and dependent, the jurisdiction of the court follows that of the original cause, and may be maintained without regard to the citizenship of the parties or the amount involved, and notwithstanding the provisions of section 265 of the Judicial Code (Rev.St., § 720), U.S.C., title 28, § 379 [predecessor of present 28 U.S.C. § 2283]." 292 U.S. at 239, 54 S.Ct. at 697.

### 2.

■ Appellees argue that, by filing a motion to dismiss in the state court (which that court has not ruled on, so far as we are advised) and delaying one year in bringing this action, appellants have waived, or are estopped from asserting, their right to federal relief. There is no indication of an intent to relinquish the federal right, and therefore there was no waiver. Nor has there been the reasonable and detrimental reliance on the delay that would be required to establish an estoppel.

### 3.

28 U.S.C. § 2283 reads as follows:

"A court of the United States may not grant an injunction to stay proceedings in

a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

The "effectuate its judgments" exception was added in 1948 to permit a federal court to enjoin relitigation in a state court of a matter determined by a judgment of the federal court, thus abrogating *Toucey v. New York Life Insurance Co.*, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100 (1941). 28 U.S.C.A. § 2283, Revisor's Note; 1A, Part 2 J. Moore, *Federal Practice* ¶ 0.208[2]–[3] (2d ed. 1974); *Doe v. Ceci,* 517 F.2d 1203, 1207 (7th Cir. 1975). As Justice Reed said in his *Toucey* dissent, the alternative to allowing such injunctions "is that a federal judgment entered perhaps after years of expense in money and energy and after the production of thousands of pages of evidence comes to nothing that is final. It is to be only the basis for a plea of *res judicata* which is to be examined by another court, unfamiliar with the record already made, to determine whether the issues were or were not settled by the former adjudication." 314 U.S. at 144, 62 S.Ct. at 149.

The relitigation exception of § 2283 applies not only when the prior federal judgment is *res judicata* but also when the doctrine of collateral estoppel, or issue preclusion, is relied upon. *International Association of Machinists v. Nix,* 512 F.2d 125, 132 (5th Cir. 1975). We have even applied it to preclude an ancillary claim that could have been, but was not, asserted in the federal action, *Lee v. Terminal Transport Co.,* 282 F.2d 805, 807 (7th Cir. 1960), *cert. denied,* 365 U.S. 828, 81 S.Ct. 713, 5 L.Ed.2d 705 (1961), but we need not go that far to decide the case at bar.

We noted earlier that the allegations made in Woodmar's state complaint were fully litigated and rejected by the bankruptcy court. If that court had accepted the allegations, it would have removed and surcharged the trustee and his attorney and ruled differently with respect to the allowance of the claims of the bondholders. Thus, the orders of the bankruptcy court declining to remove McLean and Davis as trustee and trustee's attorney, its later award of fees to them, and its ultimate distribution to the creditors, all rest on the rejection of Woodmar's allegations. McLean, Davis, and the bondholders were parties to the adjudication of Woodmar's allegations, and, under well-settled principles, they are entitled to injunctive relief against relitigation of the issues decided in their favor by the bankruptcy court.

The remaining appellants were not parties to the bankruptcy but were either attorneys for the parties or did business with the bankrupt estate by buying real estate or arranging sales. They are entitled, despite the absence of mutuality of estoppel, to assert collateral estoppel, or issue preclusion, as to issues sought to be relitigated in the Indiana action, Woodmar having had a full and fair opportunity to litigate those issues in the bankruptcy proceeding. *Federal Savings and Loan Insurance Corp. v. Hogan,* 476 F.2d 1182, 1187 (7th Cir. 1973); *cf. Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); see also *Restatement (Second) of Judgments,* Appendix § 88, comment *b* at 162–163 (Tent.Draft No. 3, 1976). They are therefore entitled to an injunction against relitigation of those issues.

There are especially compelling reasons in the case at bar for applying the doctrine of issue preclusion in favor of nonparties. Each of the appellants who was not a party to the bankruptcy proceeding participated in that proceeding in some way necessary to the administration of the estate. The Bankruptcy Act could not be properly administered without attorneys to appear on behalf of the parties, buyers to purchase the assets of the estate, or agents to handle the sales. These persons should be protected, for the same reason parties should be protected, from the burden and expense of relitigation in a state court. Especially is this so when the charges sought to be relitigated were found by this court fifteen years ago to have been made in bad faith. Injunctive relief is needed to pre-

**50**

serve the full "fruits and advantages" of the federal judgment, see *Local Loan Co. v. Hunt, supra,* 292 U.S. at 239, 54 S.Ct. 695. Furthermore, allowing an unsuccessful litigant to harass other participants in the federal case flouts and may be said to "seriously impair the federal court's . . . authority to decide that case." *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 295, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970).[2]

The judgment of the District Court is reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

**2.** In view of our disposition of the case it is unnecessary to address appellants' argument that only the trustee in bankruptcy may assert Woodmar's claim, compare *Chappel v. First Trust Co. of Appleton, Wisconsin,* 30 F.Supp. 765, 766–767 (E.D.Wis.1940), with *Meyer v. Fleming,* 327 U.S. 161, 164–166, 66 S.Ct. 382, 90 L.Ed. 595 (1946), and 4A *Collier on Bankruptcy* ¶ 70.05 at 74 n. 40 (14th ed. 1976), or to consider whether, assuming this argument is correct, an injunction would be permitted by § 2283 in the absence of a prior adjudication of Woodmar's claim in the bankruptcy proceeding.