In re McCOOK BOXED BEEF
CORP., Debtor.

KENOSHA BEEF INTERNATIONAL,
INC., Plaintiff,

v.

McCOOK BOXED BEEF CORP., McCook
Packing Corporation, Gerald Romanoff
and Michael Romanoff, Defendants.

Bankruptcy No. 80 B 10165.

United States Bankruptcy Court,
S.D. New York.

Nov. 8, 1982.

Levin & Weintraub, New York City, for debtor.

Feder, Barnett & Platt, New York City, for Gerald Romanoff, et al.

Finkel, Goldstein & Berzow, New York City, for Creditors Committee.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for Bankers Trust Co.

Weingrad & Weingrad, New York City, for Kenosha Beef.

## MEMORANDUM & ORDER

JOHN J. GALGAY, Bankruptcy Judge.

Bankers Trust Company ("Bankers Trust"), in this application for injunctive relief, urges this Court to restrain Kenosha Beef International ("Kenosha") from pursuing its New York State Supreme Court action ("State Court Action") against Bankers Trust. Bankers Trust argues that the issues involved in the State Court Action have already been determined, adversely to Kenosha, by an examiner appointed by this Court. Kenosha replies that, notwithstanding the examiners findings, such a stay of its state court proceeding against Bankers Trust would be improper since it has never had the opportunity to fully and fairly litigate the matter broached in the state court

suit. This Court, for the reasons set out below, finds merit in Kenosha's position and accordingly denies Bankers Trust's application for an injunction.

*Background*

The instant controversy between Kenosha and Bankers Trust arises as a result of their separate creditor relationships with McCook Boxed Beef Corp. ("McCook"), a boxed beef wholesaler which, on February 5, 1980, filed a petition in this Court for relief under chapter 11 of the Bankruptcy Reform Act of 1978 ("Code"). Bankers Trust, under a pre-petition loan agreement, provided McCook with a credit line extending to 80 percent of its eligible receivables (those less than 5 weeks old). In return, certain loans were subordinated to the Bank's claims and Bankers Trust received a security interest in 80 percent of McCook's accounts receivable and 50 percent of its inventory. In addition, the Bank was given unlimited personal guarantees by Nat, Michael and Gerald Romanoff (the sole directors and officers of McCook) and unlimited guarantees by McCook Holding Corp. and Romanoff Equities Inc. (companies controlled and operated by the Romanoffs). This financing arrangement between Bankers Trust and McCook continued unchanged from the time of McCook's incorporation in 1976 to the time of its filing for bankruptcy.

On February 7, 1980, two days after McCook filed its petition, the Hon. Roy Babitt, upon the recommendation of the United States Trustee's office, signed separate *ex parte* orders authorizing, *inter alia,* McCook to execute a post-petition financing agreement with Bankers Trust. These orders were immediately challenged with orders to show cause brought by Kenosha and Midwest Quality Beef ("Midwest"), two large creditor suppliers of McCook, on the ground that McCook and Bankers Trust had conspired to defraud McCook's creditors.

Specifically, Kenosha and Midwest alleged that in the months immediately prior to the filing of the petition, McCook, with Bankers Trust's knowledge and encouragement, deliberately acquired excess invento-

ry, for which McCook did not pay. Instead Kenosha and Midwest aver that McCook issued checks with insufficient funds behind them and with the alleged intention of stopping payment on the checks before collection.

Midwest's order to show cause challenging the *ex parte* orders was heard on February 22, 25, 26, and 27 of 1980. It was virtually identical to Kenosha's order. Kenosha was an active participant in these hearings; it issued subpoenas and conducted direct and cross examination of witnesses. These proceedings were terminated by an order of February 28, 1980 ("February 28th order"), appointing an examiner and withdrawing with prejudice the February 18 applications for orders to show cause. By the terms of the February 28th order, these applications, alleging fraud, could be reinstated upon the recommendation of the examiner.

The examiner was empowered by the terms of the February 28th order to "investigate the acts, conducts, assets, liabilities, and financial condition of the debtor . . . and any other matter relevant to the case or to the formulation of a plan." Pursuant to this grant of authority, the examiner included within the scope of his examination "the books and records of McCook Boxed Beef Corp. ("Debtor") and of Bankers Trust Company . . . relating to its dealings with the Debtor" and took testimony under oath of the Debtor and Bankers Trust. Report of Examiner, *In re McCook Boxed Beef Corp.*, 80 B 10165 at 1 (January 9, 1981) (hereinafter "Examiner's Report").

In the course of his eleven month investigation the examiner found no evidence of wrongdoing on the part of Bankers Trust and only enough evidence as to the Debtor to support the appointment of a trustee for McCook. Examiner's Report at 25. No

other action was recommended by the examiner. Concerning the specific allegation that Bankers Trust conspired to increase the Debtor's inventory at the expense of other creditors, the examiner found that "the bank's representatives repeatedly advised the Debtor to decrease its inventory." Examiners Report at 6. The examiner also found that the Debtor did not consult Bankers Trust regarding purchases of inventory. *Id.*

On January 13, 1981, immediately after the January 9, 1981 filing of the Examiner's Report, Kenosha instituted the State Court Action alleging the same charges of fraud against Bankers Trust as were raised in the Midwest and Kenosha applications to the Bankruptcy Court. Bankers Trust moved in this Court to enjoin Kenosha's State Court Action and the matter was taken *sub judice* on March 18, 1981, and held until such time that it was determined that the State Court Action was proceeding and a decision on the injunction was necessary.

On July 15, 1982, attorneys for Bankers Trust notified this Court that Kenosha was still actively pursuing a state court remedy and revived their request for an injunction.[1]

*Issue*

The issue confronted is this Court's ability or right to enjoin a proceeding in state court. That ability or right hinges on the applicability of principles of *res judicata* and collateral estoppel.

*Discussion*

A federal court's ability to enjoin a state court action is both granted and severely limited by section 2283 of title 28 of the United States Code:

A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where neces-

---

1. Bankers Trust made a motion in state court to strike the case from the trial calendar (Strike Motion). In its affirmation in opposition, Kenosha claimed that at a hearing on March 18, 1978, this Court had denied Bankers Trust's motion to enjoin and had told Kenosha it could proceed in state court. This Court did not, on March 18, 1981, and has not, until now, ruled

on Bankers Trust's motion. The transcript of the March 18, 1980 hearing lends no support to Kenosha's allegation. Further, a simple examination of the docket would have shown Kenosha, had it any doubts, that the matter was *sub judice*. The State Court denied Bankers Trust's Strike Motion.

sary in aid of its jurisdiction, or to protect or effectuate its judgments.

■ This statute has been strictly construed. "On its face [section 2283] is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 288, 90 S.Ct. 1739, 1744, 26 L.Ed.2d 234 (1970); *accord, e.g. Browning Debenture Holders' Committee v. Dasa Corp.,* 605 F.2d 35, 38 (2d Cir.1978).

The Bankruptcy Court is empowered to enjoin state court actions when it is appropriate under Code section 105(a), which provides: "The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." This section acts as an "authorization, as required under 28 U.S.C. § 2283, for a court of the United States to stay the action of a state court." Report of the Committee on the Judiciary, *Bankruptcy Law Revision,* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 316 (1977); Report of the Committee on the Judiciary, Bankruptcy Reform S.Rep. No. 95–989, 95th Cong., 2d Sess. 29 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787.

Implicit in the section 2283 authorization to a Court "to protect or effectuate its judgments" is the ability to stay a state court action when the principles of *res judicata* or collateral estoppel are applicable. This has been recognized by many courts. Our own Circuit Court has held that a court may appropriately enjoin a state court action barred by these principles. "The district court correctly enjoined relitigation of claims in the state courts which previously had been adjudicated in the federal courts...." *Browning Debenture Holders' Committee v. Dasa Corp.,* 605 F.2d 35, 38 (2d Cir.1978). The Fifth Circuit Court has held "The law is well settled that federal courts may enjoin relitigation in state court of issues that federal courts have fully and finally adjudicated." *Meridan Investing and Development Corp. v. Suncoast Highland Corp.,* 628 F.2d 370, 373 (5th Cir.1980),

*quoting International Association of Machinists and Aerospace Workers v. Nix,* 512 F.2d 125, 130 (5th Cir.1975) ("relitigation exception of § 2283 applies not only when the prior federal judgment is *res judicata* but also when the doctrine of collateral estoppel or issue preclusion is relied upon"); *see Samuel C. Ennis and Co. v. Woodmar Realty,* 542 F.2d 45, 49 (7th Cir.1976). If the controversy between Kenosha and Bankers Trust was addressed by prior bankruptcy proceedings and thus either *res judicata* or collateral estoppel principles apply, then this Court is empowered to enjoin the action in state court.

■ *Res judicata* is an absolute bar to the parties in a case (or those in privity with them) from relitigating a case in a new forum. It is a broad prohibition of any claim that was or could have been raised in the original suit. See, F. James & G. Hazard, *Civil Procedure,* § 1102 (2d ed. 1977); *also Black's Law Dictionary* 1174 (5th ed. 1979). Although Bankers Trust was not a named defendant in the action in the bankruptcy court, the Examiner's Report, of necessity, inquired into Bankers Trust's behavior. However, the causes of action in these two cases are not the same. McCook was the subject of the Examiner's scrutiny; Kenosha is suing Bankers Trust alone. Bankers Trust's liability for fraud is not entirely dependent on McCook's, and vice versa. As the Circuit Court stated in *Tucker v. Arthur Andersen & Co.:* "The fact that several operative facts may be common to successive actions between the same parties does not mean that a judgment in the first will always preclude litigation of the second." 646 F.2d 721, 727 (2d Cir.1981). Thus, the principle of *res judicata* is not applicable here and cannot be a basis upon which this Court may enjoin a state court action.

■ Collateral estoppel, however, does not depend on causes of action. It precludes relitigation of an issue "that was raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action." *Tucker v. Arthur*

*Andersen & Co.,* 646 F.2d 721, 728 (2d Cir. 1981) (citation omitted). Collateral estoppel requires that the issue have been fully litigated and have been necessary to the decision rendered.

Kenosha's allegation of misconduct on the part of Bankers Trust was raised in its own and Midwest's adversary proceedings against McCook in this Court. Midwest's case came to trial, a trial in which Kenosha was an active participant. As a result of that litigation an order was entered, to which all parties agreed, including Kenosha, appointing an examiner and withdrawing all adversary proceedings with prejudice except upon the Examiner's recommendation. The scope of the examiners investigation, authorized by this Court's February 28, 1980 order, necessarily included a close examination of all of the Debtor's dealings with Bankers Trust as McCook's factor and major source of financing. That examination and the report it produced was lengthy and detailed. Kenosha could have appealed the order appointing the examiner or protested the conclusions of his report in this Court. It chose to do neither.

However, the issue before the examiner was McCook's fraud. In examining that, the examiner was authorized to report, as well, on "any cause of action available to the estate." February 28th Order at ¶ 4. Fraud by Bankers Trust would have been such a cause of action if it effected the estate. The examiner discovered no such fraud giving rise to a cause of action. However, such a finding does not necessarily exonerate Bankers Trust. For instance, fraud by Bankers Trust that injured Kenosha and not the estate, unlikely though that is, was not necessarily determined by the Examiner's Report.

Collateral estoppel may apply but the propriety of such application is not clear. It is a well established principle that, even where a federal court has the power to enjoin a state court action, it has discretion to refrain. "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 297, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970). This Court, in its discretion, refrains from applying the principle of collateral estoppel to this case and will not enjoin the state court action.

*Conclusion*

Based on the foregoing considerations, Bankers Trust's motion for an injunction is denied.