## HAMMER v. TUFFY.

### TUFFY v. HAMMER.
### No. 32.

Circuit Court of Appeals, Second Circuit.

Nov. 2, 1944.

Walter W. Land, of New York City, for Hammer.

Emmet L. Holbrook, of New York City, for Tuffy, trustee.

Richard Lincoln, of New York City, for B. Altman & Co., a creditor.

Patrick J. Tuffy, of New York City, for himself, as receiver.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

Mrs. Hammer, as executrix, appeals from an order in bankruptcy affirming a referee's order, which had allowed interest upon the claims of those creditors of Nichols, the bankrupt, who had filed their claims in season, in priority to the principal of her claim, filed many years later. She also complained of the amount allowed the trustee as compensation. Tuffy, as receiver, appeals from an order affirming a referee's order, which, in fixing his allowance did not include in the base for computation under § 48, sub. a (2), 11 U.S.C.A. § 76, sub. a(2), certain claims against two decedents' estates in which the bankrupt had had an interest. The following were the facts.

Nichols became a voluntary bankrupt on December 18, 1912; she scheduled Valdemar T. Hammer, the appellant's testator, as a creditor for $3,460; but he did not file any claim within the prescribed period. On the other hand, although she scheduled no assets of value, twelve creditors did file their claims; amounting to $2,563.50 in all. The first referee to whom the case was referred received nine of these, stamped them, "Filed"; and noted them in his docket as "filed claims." He died and a substituted referee received the other three, which he also stamped as "Filed"; but it does not appear whether he entered them on his docket, or made any formal allowance of them, or of the first nine. The bankrupt never applied for a discharge, and died during the year; no trustee was ever appointed, and on December 8, 1913, the second referee "closed the case" under a local bankruptcy rule. On January 29, 1940, one of the creditors petitioned to reopen the estate in order to administer newly discovered assets consisting of the bankrupt's interests in two estates of deceased persons; Tuffy was appointed receiver, and later trustee, and after considerable litigation, collected about $18,000. (There remains also a large claim which has not been col-

lected, but which, at best, is of extremely doubtful value.) On February 15, 1940, Mrs. Hammer, Valdemar T. Hammer's executrix, filed a proof of claim for $3,460, which was allowed by a third referee to whom the case had been referred, after the reopening of the estate.

This referee allowed to the trustee's attorney, $6,750, which with other deductions left in the hands of the trustee $8,646.99. He decided that in distributing this the twelve creditors who had filed in season should be paid their interest to the date of payment, which brought their share to $7,290.93 leaving a balance of only $1,356.06 applicable to the Hammer claim of $3460. Mrs. Hammer protests against this division, and also against the allowance to the trustee's attorney, which, she asserts, should not have been more than $5000. The questions upon her appeal are therefore: (1) Whether interest should be allowed upon the claims of the creditors who filed in season; and (2) whether the allowance to the attorney for the trustee was too great.

The appeal of Tuffy, as receiver, is from an allowance to him of $250, which he says is too little. He was appointed receiver on January 24, 1940, and trustee on February 15, 1940. The only assets on which anything was ever recovered were the claims against the two decedent estates, already mentioned; during the three weeks in which he served as receiver, he collected nothing on these. The order making him the allowance was entered on July 28, 1943; he served a notice of appeal on August 31, 1943. Naturally, he had never served any notice of entry of the order upon himself, and, of course could file no proof of such service in the clerk's office. On his appeal two questions arise: (1) Whether he had thirty or forty days within which to appeal; and (2) whether he was entitled to an allowance, based upon the value of the amounts collected by himself as trustee upon the two claims after he had ceased to be receiver.

We will take up Mrs. Hammer's appeal first. The words, "paid in full," occur, not only in § 57, sub. n but in § 64, sub. a, 11 U.S.C.A. §§ 93, sub. n, 104, sub. a; but no courts have construed them in either section, or in § 64, sub. b. Mrs. Hammer's brief asserts that the phrase, so far as it touches the priority of wages in § 64, sub. a, "has been uniformly applied as meaning the payment of only the principal"; but she cites no decision in support of the statement, and, as we have just said, after considerable search we have not been able to find any. It is extremely unlikely that in fact there are any, for wages are generally paid in advance of the final distribution of the bankrupt estate, and are of small enough amounts to make interest a trivial item. In the case of taxes we did hold in Re Menist & Co., 290 F. 947, that interest ran to the date of payment; and, although the Supreme Court reversed us as to the amount to be allowed (United States v. Childs, 266 U.S. 304, 45 S.Ct. 110, 69 L. Ed. 299), it did not disturb that ruling. However, at that time § 64, sub. a covered taxes only, and did not contain the words, "paid in full," so that our decision is scarcely relevant to the case at bar. Whether the priority of taxes under § 64, sub. a(4) includes interest must therefore be regarded as an open question. The New York Court of Appeals in People v. American Loan & Trust Co., 172 N.Y. 371, 65 N.E. 200, held that the priority granted to savings banks deposits by § 130 of the Banking Law of 1892 was limited to principal, although the section gave priority "to the payment in full" of the deposits. This seems to be the generally accepted doctrine when the question arises between two groups of creditors, one of which is entitled to priority by statute or otherwise. Whether or not the priority is stated to be until the group is "paid in full," the measure of the preference is the payment of the principal. We have collected a number of the cases in the margin.* However, the question as to how far one group of creditors shall be preferred to another, because the origin of their claims entitles them to tenderer treatment, is altogether different from what shall be the division between two groups

* Thomas v. Western Car Company, 149 U.S. 95, 116, 13 S.Ct. 824, 37 L.Ed. 663; Taylor v. Corning Bank & Trust Co., 185 Ark. 691, 48 S.W.2d 1102; In re Pacific Coast Building-Loan Association, 15 Cal. 2d 134, 99 P.2d 251; Squire v. American Express Co., 131 Ohio St. 239, 2 N.E.2d 766; In re Prudential Trust Co., 244 Mass. 64, 138 N.E. 702; Federal Deposit Insurance Corp. v. Department of Financial Institutions, 113 Ind.App. 14, 44 N. E.2d 992; (Ledford v. Skinner, 156 Or. 651, 69 P.2d 519, can hardly be counted as relevant).

which have stood originally on a parity, but one of which has asserted its rights within the period granted to it to do so, while the other has let that period pass without action.

The history of the law as the section stood before 1938, and the Congressional comment which accompanied the amendment of that year, leave no reasonable doubt as to its meaning. Until 1938, if a bankrupt's estate turned out to be large enough to pay the claims of all creditors whose claims had been allowed, any surplus went to the bankrupt, In re Silk, 2 Cir., 55 F.2d 917; Burton Coal Co. v. Franklin Coal Co., 8 Cir., 67 F.2d 796. However, that surplus was computed only after interest had been allowed to the time of payment upon the claims of those whose claims had been allowed. Johnson v. Norris, 5 Cir., 190 F. 459, L.R.A.1915B, 884; Brown v. Leo, 2 Cir., 34 F.2d 127. This result was very harsh, especially when the bankrupt had got a discharge, or—even when he had not—if the statute of limitations had run meanwhile. The situation will ordinarily arise only in cases where the scheduled assets were little or nothing, and where for that reason those creditors who do not file, may well have failed to do so for that very reason. While it has been assumed in such cases that, if the bankrupt's omission was fraudulent, he cannot prevail, it is always true that his is the duty to disclose what the assets were, and, if through his failure he has, however innocently, lulled his creditors into inaction, he should not be allowed to profit.

That this was the injustice against which the amendment was directed appears from the report of the Committee on the Judiciary, which accompanied the Chandler Act in the House; "In such a situation," (when "there is a surplus remaining"), it is only fair and equitable, as between barred creditors and the debtor, such surplus should go to the barred creditors rather than to the "debtor." The "surplus" which the committee had in mind, could only have been that which had theretofore gone to the "debtor"; and that, as we have said, was what remained after the creditors, who had not been "barred," had been paid interest to the time of payment. There is no reason to assume that Congress expected the "surplus" to be reckoned in any other way than it had been in the past. Nor do any equities favor a "barred" creditor; for, while, as against the bankrupt, he has, for the reasons we have given, a good claim to be paid, we cannot see why, as between himself and his more diligent fellows, he should be allowed to reap where he has not sown. They have not misled him; he took his chances as to the assets, they did not; they should not be compelled to feed his lamp with oil from their own; he must be content that his former plight has been relieved vis-à-vis the only person against whom he has any shadow of grievance.

Mrs. Hammer next argues that § 57, sub. n, grants priority only to claims that have been "allowed," and that, although in the case at bar the referees stamped the claims as "filed," it does not appear that they ever "allowed" them. In re Two Rivers Woodenware Co., 7 Cir., 199 F. 877, and In re Branner, 2 Cir., 9 F.2d 883, held that the bare "filing" of a claim is not of itself an "allowance"; a referee must do more than physically receive it. However, no court has ever held that an order of allowance is necessary; any act signifying that the referee has, not only actually received them, but has treated them as prima facie valid, will serve as an "allowance." To docket them is enough; and all the nine claims "filed" with the first referee were docketed. It is true that the docket of the second referee does not appear in the record, and we cannot therefore tell whether he docketed the last three; yet they were "proved" in due form and filed, and there is no evidence, as there was In re Branner, supra, 9 F.2d 883, that they had merely lain unnoticed in a basket. It seems to us therefore that the situation is within the general principle that when nothing appears to the contrary, official conduct is presumed to have been regular.

On Mrs. Hammer's appeal there remains only the question of the allowance to the trustee's attorney. As we have said, the amount collected was about $18,000, and an allowance of $6750 does indeed appear large, at first blush. However, the recovery was really salvage and involved much labor, including an appeal to this court. Tuffy v. Nichols, 2 Cir., 120 F.2d 906. Indeed, the attorney swears that he spent in all nearly 1200 hours on the estate, so that his fee comes to less than $6 an hour. All things considered,

that is not an unreasonable amount, if so much time was really necessary. Assuming a working day of seven hours and 280 working days a year, such an allowance comes to a gross income of about $12,000 a year, from which in the case of a lawyer must be deducted at least thirty per cent for overhead. We leave to the referee the determination of whether so much time was necessary; the record does not show that it was not.

■ The first question upon Tuffy's appeal, as receiver, is whether the notice of appeal was served in time; and that depends upon whether, when he appealed from the order allowing him $250, he had forty, or thirty, days. Section 25, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 48, sub. a, reads as follows: "Appeals * * * shall be taken within thirty days after written notice to the aggrieved party of the entry of the * * * order * * * proof of which notice shall be filed within five days after service or, if such notice be not served and filed, then within forty days from such entry." Tuffy was the "aggrieved party," but he did not serve any notice of entry upon himself, and hence of course there was no notice filed in court; therefore, my brothers believe that he had forty days within which to appeal. There can be no doubt that, verbally there can be no escape from this conclusion; and they are disposed to read limitations upon the right of appeal strictly. To me, however, a literal reading of the language in this case seems so patently to pervert its purpose that we should not adopt it. The added ten days were clearly given as grace to a party who had not had actual notice of the entry of the order: and our ruling means that, although a party who enters his own order has the best kind of notice of it, nevertheless he has ten days longer to appeal than if he got that notice from another party.

■ On the merits we are also not in agreement; but here the division is different. Judge Swan and I think that the order should be affirmed, on the grounds taken below. The question this time depends upon the meaning of § 48, sub. a (2), of the Bankruptcy Act of the words: "moneys * · * * realized by the trustees from property turned over in kind by them" (receivers) "to the trustees." The question is whether the claims of the bankrupt against the two decedents' es-

tates, were "property turned over in kind" by Tuffy, as receiver, to Tuffy, as trustee. If they were "turned over" at all, they were indeed turned over "in kind"; but we think that they were not "turned over." All that happened was that Tuffy was appointed trustee. We think that the clause refers to such property as at least permits of physical transfer: e. g. chattels, or notes, bonds, warehouse receipts or the like, which are regarded for many purposes as incorporating the choses in action or the chattels of which they are the evidence. We do not believe that a receiver, who has no control over such causes of action as are here in question, can be said to turn them over to the trustee who is substituted in his place. Judge Clark, however, thinks it difficult thus to differentiate between various forms of property, and on the whole undesirable since the statute merely states the maximum allowable compensation and this interpretation will restrict judicial discretion; he concurs in the denial of compensation here in the absence of proof of any "services" as to this property.

Orders affirmed.