TATE, Circuit Judge:
 

 This litigation takes place in the context of a Chapter XI proceeding, formerly 11 U.S.C. § 701
 
 et seq.,
 
 under the now-repealed Bankruptcy Act of 1898, formerly 11 U.S.C. § 1
 
 et seq.
 
 The provisions of the former statute are nevertheless statutorily specified as applicable to proceedings (as this) commenced under the former enactment.
 
 [1]
 
 
 *1281
 
 Unless otherwise denoted, the citations to provisions in Title 11 of the United States Code will be to those in effect prior to the repeal of the (former) Bankruptcy Act.
 

 The creditor’s appeal concerns the denial of secured status to a portion of its claim that was filed in this Chapter XI proceeding. The bankruptcy judge, affirmed by the district court, held that the creditor’s security interest in growing crops was not perfected in accordance with the recordation requirements of state law. The creditor, the Colorado Livestock Production Credit Association (hereinafter, “CPC”) contests that determination, and additionally it urges that the bankruptcy judge, having earlier “allowed” its entire claim as secured, lost jurisdiction to disallow that status to a portion of it.
 
 [2]
 
 Finding that the bankruptcy judge properly denied secured status to CPC’s claim at issue, we affirm.
 

 The Facts
 

 The debtor, Schwab, owned several large cattle ranches in Texas and Colorado. In 1971, he filed a Chapter XI proceeding in bankruptcy.
 

 Chapter XI of the (now-repealed) Bankruptcy Act, 11 U.S.C. § 701
 
 et seq.,
 
 permitted an insolvent debtor to petition for court approval of an arrangement for the settlement or extension of time of payment upon any terms of his
 
 unsecured
 
 debts. 11 U.S.C. §§ 706(1), 707, 723.
 
 [3]
 
 The arrangement must be approved by at least a majority of the
 
 unsecured
 
 creditors under sections 762 and 766. The court may retain jurisdiction under section 768 if so provided in the arrangement, and the court
 
 “shall
 
 in any event retain jurisdiction until the final allowance or disallowance of all claims affected by the arrangement,” section 769. The Chapter XI proceeding may be dismissed and the debtor directed into bankruptcy if the arrangement is unsatisfactorily processed or is withdrawn or abandoned, section 776, or (where the court has retained jurisdiction after confirmation of an arrangement, section 777) if the debtor defaults in fulfilling the arrangement.
 

 ' We need not here detail the subsequent proceedings except to note that a plan of arrangement was confirmed on March 28, 1972. The plan of arrangement provided for the sale of the Schwab assets to another corporation, at a price which would pay (a) all priority debts and (b) ten cents on the dollar of unsecured claims (which claims, however, would receive additional dividends if Schwab’s claims against third persons were successfully prosecuted).
 

 It was not until June 13, 1973, more than a year after confirmation of the plan, that
 
 *1282
 
 Schwab (in his status as debtor in possession exercising the powers of a trustee for the benefit of the unsecured creditors, 11 U.S.C. § 742) for the first time disputed the secured nature of a portion of CPC’s claim.
 

 The bankruptcy judge upheld Schwab’s contention and denied secured status, and he also rejected CPC’s argument that he had lost jurisdiction to disallow secured status to the CPC debt.
 
 [4]
 
 The district court affirmed his judgment. CPC’s appeal to this court, as noted, questions both (a) the bankruptcy judge’s jurisdiction at that stage of the proceedings to disallow secured status to CPC for part of its claim and (b) his determination that CPC had not perfected its security interest in growing hay crops because of the technical insufficiency of the description in its recorded financing statement.
 

 Jurisdiction of the Bankruptcy Court to Disallow Secured Status to CPC’s Claim
 

 Schwab’s petition had recognized CPC’s entire claim of $221,232.37 as secured. It was so treated until June, 1973, when (after the financing statements were produced) recordation-description deficiencies were discovered, which brought into issue CPC’s right to receive — as a
 
 secured
 
 creditor — the proceeds from growing 1971 and 1972 hay crops, about $50,000 in amount. CPC’s premise is that, by June of 1973, when the secured status of its claim was first questioned, the bankruptcy court had lost jurisdiction because it had previously “allowed” CPC’s claim as secured.
 

 CPC argues that the bankruptcy court was not authorized to reconsider its previous allowance of this claim after confirmation of the plan of arrangement. It bases this contention solely upon a prohibition it finds expressed or implied by section 369 of the (former) Bankruptcy Act, 11 U.S.C. § 769:
 

 The court shall in any event retain jurisdiction until the final allowance or disal-lowance of
 
 all claims affected by the arrangement
 
 which has been filed within the limitations as to time and amount prescribed by § 355
 
 but have not been allowed or disallowed prior to confirmation.
 
 (Italics ours.)
 
 [5]
 

 The (former) Bankruptcy Act does not itself prescribe a specific procedure formal
 
 *1283
 
 izing allowance of a claim. In scattered decisions, none of recent vintage, the courts have considered whether a bankruptcy court has directly or indirectly allowed a claim. From these decisions, none of which concerned an issue related to section 369, 11 U.S.C. § 769, the following principles may be educed: Allowance of a claim is a judicial act, which need not but preferably should be evidenced by a formal order, by which the claim has been examined and determined to be valid. It is distinguishable from the ministerial act of “filing” the claim and the party’s act of “proving” it.
 

 See:
 
 Hammer v. Tuffy,
 
 145 F.2d 447, 450 (2d Cir. 1944);
 
 Monjar v. Higgins,
 
 132 F.2d 990, 994 (2d Cir. 1943);
 
 In re Branner,
 
 9 F.2d 883, 886 (2d Cir. 1925);
 
 In re Two Rivers Wooden Ware Co.,
 
 199 F. 877, 880-81 (7th Cir. 1915);
 
 In re Arcadia Restaurant,
 
 19 F.Supp. 355 (E.D.Pa.1937).
 
 See generally
 
 9
 
 Collier on Bankruptcy
 
 ¶ 7.10(1) (14th ed. 1978); 3
 
 Collier on Bankruptcy
 
 ¶ 57.14 (14th ed. 1977).
 

 The debtor’s petition of August 2, 1971 originally classified CPC’s full claim as secured. CPC argues that this claim was judicially allowed as secured by the following acts:
 

 1. On September 29, 1971, November 19, 1971, and February 3, 1972, the court approved requests by the debtor to pay certain proceeds to CPC as a secured creditor on claims noted as “properly classified as secured; ”
 

 2. On February 24, 1972, the court did not allow CPC’s claim as unsecured for
 
 purposes of voting as an unsecured creditor
 
 and “for no other purpose, and without prejudice to the later possible allowance of the claims,” when it upheld the debtor’s objections “to the temporary allowance of all claims filed as unsecured in the amounts allowed.”
 

 3. On February 18, 1972, at the adjourned first meeting of the creditors to consider the confirmation of the arrangement plan presented by the debtor, the minute entry reflects that “claims on file would be accepted in the
 
 amount
 
 on file unless objections filed.” CPC contends that therefore its claim was recognized as secured, overlooking that the approval was for temporary allowance for voting, as were the objections.
 
 See
 
 11 U.S.C. App. Rule 207(a) (1976); 9
 
 Collier on Bankruptcy
 
 ¶ 7.10(2) at 58 (14th ed. 1978). (As styled in Schwab’s objection — which was sustained on February 24, see 2 above — the “objection [was] to temporary allowance of claims for voting,” App. 136).
 

 None of the acts relied upon evidences a judicial determination to allow CPC’s
 
 entire
 
 two hundred thousand dollar claim as secured, so as to constitute a judicial determination that CPC enjoyed secured status with regard not only to the one-hundred-fifty-thousand dollar admittedly secured portion of the claim but also including the fifty-thousand dollar of proceeds to be derived (later) from growing hay. For instance, as the appellee argues quite persuasively, the record does not reflect other than that the relatively minor proceeds ($818.75 and $6,759.15 respectively) paid to CPC per orders of November 19 and February 3 were from hay which had
 
 already
 
 been harvested at the time the debt- or’s petition was filed, in which CPC concededly had a perfected secured interest.
 

 As the district court held:
 

 None of these acts of classification evidence judicial recognition of the liens. The debtor’s scheduling is the debtor’s, not the court’s acts. The remaining acts were incident to the plan’s approval. Because voting on a plan often precedes allowance of claims § 44a, 5f and 5e of the act authorized objection for purposes of voting only. The February 18, 1973 order specifically provided:
 

 It is further ordered that all other claims filed as unsecured are temporarily allowed for voting only on the amounts filed.
 

 Given the voting power of W. L. Moody who represented 91% of all unsecured claims ($2,597,514.65), this denial of CPC’s voting rights as an unsecured creditor was harmless. Certainly in view of the plain language of the February 18, 1973
 
 *1284
 
 order CPC was not entitled to infer that its claim had been allowed.
 

 In sum, the claim of CPC was not allowed and the Bankruptcy Court had jurisdiction to entertain the objection of June 13, 1973.
 

 Validity of CPC’s Security Interest in Growing Crops
 

 Colorado has adopted, with variations here important, the Uniform Commercial Code. The issue is whether CPC’s security interest in growing hay crops on a Colorado ranch was perfected under Colorado law so as to affect third persons at the time the debtor filed his Chapter XI petition. If not so perfected, the proceeds from the crop were properly made available for general distribution to the unsecured creditors free of CPC’s claim of a secured interest therein. Section 70(c) of Bankruptcy Act, 11 U.S.C. § 110(c); sections 341, 342 of Bankruptcy Act, 11 U.S.C. §§ 741, 742.
 

 In order to affect third persons, with exceptions not here pertinent, a security interest must be perfected by public recor-dation of a financing statement. Colo.Rev. Stat. §§ 155-9-301, 302 (1963) (hereinafter C.R.S.), UCC §§ 9-301, 302. “When the financing statement covers crops growing or to be grown . . . , the statement must also contain a description of the real estate concerned.” C.R.S. § 155-9^402(1); UCC § 9-402(1). This requirement of a specific description of the real estate is tempered under the Uniform Commercial Code by the provision that, for purposes of Article 9 (secured transactions), “any description of personal property
 
 or real estate
 
 is sufficient whether or not it is specific if it reasonably identifies what is described.” UCC § 9-110 (Italics ours.)
 

 Colorado, however, deliberately modified 9-110 in its enactment of the Code. C.R.S. § 155-9-110 provides instead: “For the purposes of this Article, any description of
 
 personal property
 
 is sufficient if it specifically identifies and itemizes in the security agreement what is described as to consumer goods, and whether or not it is specific if it reasonably identifies what is described as to all other personal property.”
 
 [6]
 
 By deleting the reference to real property, the Colorado enactment did not permit the reasonable-identification principle to cure a deficiency in the description of real property in a financing agreement, C.R.S. § 155-9-402(1),
 
 supra,
 
 that is recorded in order to perfect a security interest in growing crops. Clark,
 
 Some Problems in Lending Under the UCC,
 
 39 Col.L.Rev. 353, 353-55 (1967).
 

 In the instant case, the growing hay crops were located on the debtor Schwab’s 14,000 acre ranch some 14 miles east of Walden in Jackson County, Colorado. Two financing statements recorded in Jackson County purported to perfect a security interest attaching to: “Annual and perennial crops of whatever kind and description which are now growing on or are hereafter planted, grown and produced on land owned and leased by the undersigned debtors
 
 situated at various locations.”
 
 App. 175, 176. The italicized phrasing is the only description of the real estate contained in the financing statement. It is patently insufficient to give public notice as to what real estate was involved and where it was located,
 
 [7]
 
 whether in Jackson County or elsewhere in Colorado or Texas.
 
 [8]
 
 The third
 
 *1285
 
 financing statement, if intended to apply to growing hay, was similarly deficient; its description, in full, was only: “Grain, processed and unprocessed feed and harvested crops.”
 

 The bankruptcy judge and the district court correctly held, therefore, that CPC’s security interest in the growing crops on the Schwab lands was not perfected by the recording of financing statements with inadequate or no description of the real estate concerned.
 

 AFFIRMED.
 

 [1]
 

 . Pub.L. 95-598, Title I, § 101, Nov. 6, 1978, 92 Stat. 2549, codified and enacted the law relating to bankruptcy as new Title 11, entitled “Bankruptcy”. Section 401(a) repealed the Bankruptcy Act of July 1, 1898, c. 541, 30 Stat. 544, which comprised former Title 11, but section 403(a) provided that “A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act [Pub.L. 95-598] had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be gov
 
 *1281
 
 erned by the law applicable to such case, matter, or proceeding as if the Act had not been enacted.” The effective date for most of the provisions of the new bankruptcy codification was October 1, 1979.
 

 [2]
 

 . Relying upon
 
 Whiteford Plastics Co. v. Chase National Bank,
 
 179 F.2d 582 (2d Cir. 1950), CPC also contends that the debtor (acting as a trustee for the estate, 11 U.S.C. § 742) should not have been afforded the favored position accorded by section 70(c) of the Bankruptcy Act, 11 U.S.C. § 110(c). By this section, a lien is disallowable for the benefit of the general creditors, if it could have been successfully attacked for technical or other insufficiency by a hypothetical creditor with a lien upon all the debtor’s property. In
 
 Whiteford,
 
 the court refused to accord 70(c) power to the Chapter XI debtor to void a defectively recorded lien, because voiding the lien would benefit only the debtor, not the unsecured creditors who had previously accepted the arrangement and could receive no more than the 10% or so of their claims thereby provided. As both bankruptcy judge and district court held in detailed and excellently-reasoned decisions, the
 
 Whiteford
 
 principle is inapplicable to the present facts, where the unsecured creditors
 
 would
 
 be benefited by invalidation of the Association’s lien.
 

 We have also considered, but reject, CPC’s argument that the debtor should be barred from contesting the secured claim status by the doctrines of waiver, laches, and estoppel.
 

 [3]
 

 . In the 1978 bankruptcy codification, the subjects of former Chapters VIII (railroad reorganizations), X (corporate reorganizations), XI (arrangements concerning unsecured debts), and XII (arrangements by non-corporate debtors concerning secured interests affecting real property), are consolidated for comprehensive and sometimes new treatment in a Chapter 11 (“Reorganization”), § 1101 et seq., in the new Title 11. Several of the provisions of the former Chapter XI, including 11 U.S.C. § 769 (here at issue, see text infra), are entirely eliminated in the new codification.
 

 [4]
 

 . Of course, CPC would then be relegated to receiving 10% of the portion of the claim held to be unsecured, together with any additional dividends from other accruals to the debtor’s estate. Similarly, the other unsecured creditors would receive, in addition to the 10% payment of their claim resulting from the approved purchase of Schwab assets, additional payments by reason of these other accruals, such as that represented by the freeing from secured status of the portion of CPC’s claim now available for general distribution to the unsecured creditors.
 

 [5]
 

 . Since we affirm the district court’s ruling that CPC’s claim had never been allowed as secured, and because 11 U.S.C. § 769 has been repealed by the new bankruptcy codification without being replaced by a comparable provision (so that our present ruling has little future significance), we find it unnecessary to discuss possible constructions of this repealed provision and of the former Bankruptcy Act which are even less favorable to the appellant CPC’s position:
 

 (1) Since the arrangements of former Chapter XI statutorily concern only settlement of or extensions of payment for unsecured claims, would the declassification of a claim previously recognized as secured (consequently freeing the formerly withheld proceeds for distribution to the unsecured creditors) constitute a disal-lowance for purposes of Chapter XI?
 
 (Cf.
 
 9
 
 Collier on Bankruptcy,
 
 1| 9.30[3] (14th ed., 1978).
 

 (2) The court retained jurisdiction over the plan of arrangement at the time of its confirmation as statutorily authorized (11 U.S.C. § 768), for the purpose of further proceedings if the buyer of Schwab’s property defaulted in its payments (which were to enure to the benefit of the unsecured creditors). In view of this circumstance, and of the court’s consequent retained authority to order the debtor’s bankruptcy upon default, 11 U.S.C. § 777, a strong contention could be made that, even if the court had (erroneously) allowed CPC’s claim as secured, it still retained jurisdiction to disallow it while the proceedings were pending, by virtue of section 57(k) of the former Bankruptcy Act, 11 U.S.C. § 93(k): “Claims which have been allowed may be reconsidered for cause and reallowed or rejected in whole or in part according to the equities of the case, before but not after the estate has been closed.”
 
 Cf., In re Plankinton Bldg. Co.,
 
 46 F.Supp. 697 (E.D.Wisc.1942). (Chapter X proceeding) and 11 U.S.C. § 702 (Chapter XI).
 

 [6]
 

 . Another Colorado statute enacted at the same . time, C.R.S. § 155-9-401(5) (1963), required that financing statements covering crop mortgages be cross-indexed in the real estate record. This additional requirement of cross-indexing was eliminated by later amendment in 1967.
 

 [7]
 

 . See, e. g.,
 
 Chanute Production Credit Ass’n v. Weir Grain and Supply, Inc.,
 
 210 Kan. 181, 499 P.2d 517 (1972), where a Kansas secured creditor’s suit against the purchaser of the crops failed, on a holding that the financing statement—which described the realty as “land owned or leased by the debtor in Cherokee County, Kansas” — did not perfect the security interest in the growing crops because of the insufficiency under UCC § 9-402(1), K.S.A. 84-9-402, of the description of the real estate concerned.
 

 [8]
 

 .The debtors were described as Charles F. and Gwen Schwab, with address of “Walden, Colorado and/or Grand Prairie, Texas.”