**In re GREENWICH GREEN, INCORPORATED, Bankrupt.**

**Bankruptcy No. B–79–164.**

United States Bankruptcy Court, D. Connecticut.

June 28, 1983.

Miles F. McDonald, Jr., Badger, Fisher, Cohen & Barnett, Stamford, Conn., for Badger, Fisher, Cohen & Barnett.

Marsha Moses, Ronai, Berchem & Moses, P.C., Milford, Conn., for Citytrust.

Jules Lang, Lepofsky, Lepofsky & Lang, Norwalk, Conn., for Merchants Bank & Trust Co.

Paula L. Schiffer, Schatz & Schatz, Ribicoff & Kotkin, Hartford, Conn., for Alfred Peterson.

Albert, Pastore & Ward, P.C., Greenwich, Conn., for Greenwich Green Condominium Ass'n, Inc.

Anthony M. Fitzgerald, Carmody & Torrance, Waterbury, Conn., for Michael J. Papa Associates.

Charles H. Boisseau, Daniel W. Moger, Jr., Bently, Lane, Mosher & Babson, P.C., Stamford, Conn., for Union Trust Co.

Thomas J. Heagney, Heagney, Lennon, Tesei & Slane, Greenwich, Conn., for Andrew Bella.

Michael S. Sherman, Perell, Sherman & Kivell, Stamford, Conn., bankruptcy trustee.

## MEMORANDUM AND ORDER ON OBJECTION TO CLAIMS

ALAN H.W. SHIFF, Bankruptcy Judge.

At the duly noticed Final Meeting of Creditors in the above-captioned case, I reserved decision on the trustee's objections to the general claims of Greenwich Green Condominium Association, Inc. (Condominium Association) and to the claim of Badger, Fisher Cohen & Barnett (Badger). For the reasons set forth below, the trustee's objections are sustained.

### I.

### BACKGROUND

The relevant background common to both objections may be stated briefly.[1] On March 22, 1979, the bankrupt, Greenwich Green, Incorporated, filed a petition under Chapter XI of the Bankruptcy Act of 1898.[2] On May 2, 1979, pursuant to a petition for conversion to bankruptcy filed by the debtor, there was an adjudication of bankrupt-

---

1. The parties at the final meeting did not formally offer evidence. The material facts necessary for the resolution of the issues raised herein were gleaned from briefs, the court's own file, a transcript of an earlier proceeding, and information provided by the parties at the hearing.

2. This case is governed by the provisions of the Bankruptcy Act and not the Bankruptcy Code. Section 403(a) of the Bankruptcy Reform Act of 1978, Pub.L. 95–598 provides

A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted.

cy. Thereafter, on May 4, 1979, this court, (Trevethan, J.) scheduled the first meeting of creditors for May 29, 1979, and, in accord with Bankruptcy Rule 302,[3] stated: "Claims which are not filed within 6 months after ... the first meeting of creditors will not be allowed, except as otherwise provided by law." On May 30, 1979, the trustee was appointed.

On February 7, 1980, subsequent to the passing of the above bar date and prior to the filing of the claims in dispute, the trustee filed a "petition for order approving proposed stipulation for settlement," which is central to the instant controversy. The petition alleged in essence that the estate's only property was twenty-eight unsold condominium units; that the property was subject to various encumbrances, which exceeded the property's market value; that two foreclosure actions against the property were pending in Connecticut Superior Court; that in conferences held before a judge of the superior court, the parties in interest compromised their diverse claims; and finally, that the subject stipulation for settlement (Stipulation) was in the best interest of the bankrupt estate "inasmuch as it [was] likely to convert the same from a no-asset estate to an estate with assets, sufficient to fully pay all claims filed to date and not otherwise satisfied under the term of said Stipulation."[4] The Stipulation was annexed to the petition. On the date the petition was filed, this court (Trevethan, J.) approved the Stipulation and authorized the trustee to enter into and sign the Stipulation on behalf of the bankrupt estate. In pertinent part, the Stipulation provided that a fund was to be created by a foreclosure sale of the debtor's property and an order of distribution was established for the proceeds.

The payment of those proceeds are now mired at the sixth level of distribution where the trustee has received the funds "for payment of all proven and allowed claims in Bankruptcy case Number B–79–164." Stipulation ¶ 8.f. The next level of distribution is provided by stipulation ¶ 8.g. which reads:

"Any proceeds then remaining shall be the property of GG, shall be deemed to be Shareholder Equity and shall be paid over to Disbursing Agent as agent for GG for distribution in accordance with the procedures set forth in paragraph 10 hereof."

Paragraph 10 initially divides the funds equally between stockholders[5] and secured creditors. The stockholders and secured creditors were to withdraw their claims from the bankruptcy court pursuant to the Stipulation.

### A.

#### Condominium Association's Claim

Condominium Association's predecessor in interest, "De Facto Owners' Association," was a signatory to the Stipulation. On January 19, 1981, some eleven months after entering into the Stipulation, it filed a claim in the amount of $231,638.00 for breach of contract. On the same date, it filed a motion for extension of time for filing a claim against surplus. On February 6, 1981 this court (Schwartzberg, J.) granted Condominium Association's motion.[6] In granting the Condominium Association's motion, Judge Schwartzberg emphasized that the claim could only be allowed if a surplus existed.

### B.

#### Badger's Claim

Unlike Condominium Association, Badger was not a party to the Stipulation. On or

---

**3.** Bankruptcy Rule 302 provides in pertinent part:

(a) *Manner of Filing.* In order for his claim to be allowed, every creditor, including the United States, any state, or any subdivision thereof, must file a proof of claim in accordance with this rule ...

(e) *Time for Filing.* A claim must be filed within 6 months after the first date set for the first meeting of creditors, except ...

**4.** Petition For Order Approving Proposed Stipulation For Settlement, ¶ 9.

**5.** The debts owing the stockholders are apparently for reimbursement of payments they made as guarantors of the debtor.

**6.** Transcript of court hearing on February 6, 1981.

about August 21, 1980, Badger filed an application for permission to file a late claim in the amount of $28,028.53 for legal services. On October 24, 1980, Judge Schwartzberg permitted Badger to file a late claim in the amount of $28,028.53, "[s]aid claim being limited pursuant to Rule 302(5) [sic] of the Bankruptcy Rules to a claim against remaining surplus, if any."[7] Badger filed its claim on October 30, 1980.

## II.

## DISCUSSION

The arguments presented by both claimants may be summarized essentially as follows: *First,* a provision found in the Stipulation requires that their claims be allowed; *Second,* a surplus exists within the meaning of Bankruptcy Rule 302(e)(5) from which they must be paid; and *Third,* to the extent the Stipulation offends the order of priority governing claims under bankruptcy law, the Stipulation cannot be followed. I will address these contentions seriatim.

## A.

The claimants first rely on paragraph 8.f. which, as noted, calls for a distribution to the bankruptcy trustee "for payment of all proven and allowed claims in Bankruptcy case number B–79–164." The claimants emphasize that this provision contains no reference to time, and therefore argue, that their claims fall within the class of "proven and allowed claims." I do not agree.

Absent the applicability of one of the statutory exceptions, claims not filed within six months of the first meeting of creditors cannot be allowed. Bankruptcy Rule 302(e). In this case, both claimants point to the exception provided by Bankruptcy Rule 302(e)(5). That exception provides

"*If all claims allowed have been paid in full,* the court may grant a reasonable, fixed extension of time for the filing of claims not filed within the time hereinabove prescribed against any remaining surplus."
(emphasis supplied)

Thus, the Bankruptcy Act draws a sharp distinction between timely and untimely filed claims. The latter cannot be allowed, until the former have been paid in full, and then only if a surplus exists. Indeed, contrary to the general rule disallowing post-bankruptcy interest, *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 163, 67 S.Ct. 237, 240 (1946), creditors may receive interest on their claims before a tardy claimant is entitled to any surplus. *Hammer v. Tuffy,* 145 F.2d 447 (2d Cir. 1944); *In re Kingsboro Mortgage Corp.,* 514 F.2d 400, 401 n. 1 (2d Cir.1975).

Here, there is no reason to conclude that Paragraph 8.f. of the Stipulation merges timely and untimely claimants who, in the first instance, possess distinct rights. In that regard, as noted above, the trustee represented to Judge Trevethan that the Stipulation should be approved because the resulting funds were likely to satisfy "all claims *filed to date* and not otherwise satisfied under the term of said Stipulation." (emphasis supplied).

In sum, the disputed claims cannot be considered allowed unless there is a surplus within the meaning of Bankruptcy Rule 302(e)(5), which issue I next address.

## B.

Here, the question of surplus arises in a somewhat anomolous context. It is apparent that but for the Stipulation, the estate would have had no assets, and the property in all likelihood would have been abandoned by the trustee. Certainly, no surplus existed at the time the bankruptcy court approved the Stipulation. Even now, various secured creditors will not be paid in full, although by virtue of the Stipulation, certain unsecured creditors and stockholders will receive funds.

It is arguable that the Stipulation, forged with the aid of a Connecticut Superior Court Judge and approved by the bankruptcy court, is the governing order of distribution here, and consequently, there can be a

---

**7.** Order entered October 24, 1980.

surplus in the bankruptcy sense only after all payments contemplated by the Stipulation are made. Even if one conceded, however, that a surplus could exist prior to the Stipulation being completely satisfied, in this case a surplus, as intended by Bankruptcy Rule 302, does not exist. A surplus is simply funds that are distributable to the debtor because they remain after all creditors have been fully paid. The record shows that there are secured creditors of the bankrupt whose claims are not to be fully satisfied pursuant to the stipulation. In fact, the amount that the stockholders might receive appears to be considerably less than the amount which will remain owing the secured creditors. The fact that paragraph 8.g. of the Stipulation allows shareholders to receive a portion of the proceeds does not magically create a surplus for the late claimants.

### C.

The last of the claimants' arguments is that payment in accordance with the Stipulation would do violence to the order of distribution required under the Bankruptcy laws, because the claims of the stockholders may be partially paid pursuant to Stipulation ¶ 10, and those claims should allegedly be equitably subordinated. In particular, claimant Badger refers to sections 726(a) and 510, apparently of the Bankruptcy Reform Act of 1978. Those sections are inapplicable because the subject bankruptcy case was commenced under the Bankruptcy Act of 1898. *See* footnote 2, *supra*. Nevertheless, the principles contained in those sections were also found in the former law and the claimants' argument will therefore be discussed.

The claimants essentially argue that the court approved Stipulation should be partially set aside, at least as regards payments to the stockholders. While the request appears late for either claimant, it seems particularly inappropriate for the Condominium Association, because its predecessor in interest was a signatory to the Stipulation. After the passing of the bar date for filing claims, diverse parties reached an accord in the best interests of the estate, and with the bankruptcy court's approval, acted in reliance thereon. Who can say what expectations would be thwarted if the Stipulation were now altered three years after its court approval?

Although disregard of the Stipulation might create inequities, adherence to the Stipulation will leave the general creditors, Badger and Condominium Association, with nothing less than they would have been entitled to absent the Stipulation. Without the Stipulation, there would not have been a colorable claim of surplus. Moreover, as noted, pursuant to the Stipulation, the unsatisfied claims of certain secured creditors exceed the amount that the stockholders will receive. Thus, the payments to the stockholders are in essence made at the expense of the secured creditors, who entered the Stipulation, and not at the expense of the untimely general creditors, Badger and Condominium Association. In short, the normal order of distribution, even assuming the basis for equitable subordination could be shown, is not meaningfully distorted.

### III.

Accordingly, it is ORDERED that the trustee's objections to the claims of Condominium Association and Badger be, and hereby are, sustained.